DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| Kelly A. Mendenhall, | ) | |
|---|---|---|
| | ) | CASE NO. 5:06 CV 139 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Akron, et, al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | ) | |
|---|---|---|
| Janice A. Sipe, et al., | ) | |
| | ) | CASE NO. 5:06 CV 154 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Nestor Traffic Systems, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

These two joined cases challenge the Akron Ordinance which authorizes the use of cameras to record speeding violations within the City of Akron. The plaintiff, Kelly Mendenhall, received a citation for speeding in a school zone in November of 2005, hence, her petition challenging the procedure. The three plaintiffs in the Sipe case each received a citation for similar violations and seek class action status in an attempt to have the use of cameras to record speeding violations declared unconstitutional. The defendant Nestor Traffic Systems

(5:06 CV 139)
(5:06 CV 154)

operates the camera system for the City of Akron under contract. These two cases are before the Court for resolution based upon the competing motions for judgment on the record.[1]

The use of cameras was authorized by Akron City Council, Akron City Ordinance §79.01. Initially, the issue of whether the Akron City Ordinance was in violation of the restrictions on Home Rule Legislation was submitted to the Supreme Court of Ohio.[2] The Supreme Court of Ohio has determined that the challenged Akron City Ordinance is not in violation of the Ohio Constitution.[3] Following considerable discovery, the parties filed agreed stipulations of fact in three separate documents with 59 consecutive numbered paragraphs, plus attached exhibits.[4] The stipulations of fact agreed to by the parties are contained in their entirety in Appendix 1 to this Memorandum Opinion.

The case has now been fully briefed by the competing motions for judgment on the record in the two cases.

---

[1] The motions for judgment on the record in the Mendenhall case on behalf of the defendants are found at Docket No. 74 and in the Sipe case at Docket No. 58; the motion for judgment on the record filed by the plaintiff Mendenhall is found at Docket No. 75 and the motion for judgment on the record filed by the plaintiff Sipe is found at Docket No. 57.

[2] Before the submission to the Ohio Supreme Court, the Court filed extensive opinions in the Mendenhall case and the Sipe case on May 17, 2006 (*see* Docket No. 36 and 25) in which it denied the plaintiff Mendenhall's motion to remand, found no basis for abstention and further declared that the ordinance at issue was a proper exercise of the powers bestowed on the City of Akron in the context of home rule. Subsequently on November 30, 2006, the Court vacated it ruling on the issue of home rule and certified the issues involving home rule to the Ohio Supreme Court (*see* Docket No. 58 in the Mendenhall case and Docket No. 44 in the Sipe case).

[3] *See Mendenhall, et al. v. City of Akron, and Sipe, et al. v. Nestor Traffic Systems, Inc., et al.*, 117 Ohio St. 3d.33, 881 N.E. 2d 255 (Ohio 2008).

[4] The three separate agreed stipulations of fact in the Mendenhall case are found at Docket Nos. 29, 53 and 71. The identical agreed stipulations of act in the Sipe case are found at Docket Nos. 19, 40 and 55. The competing motions for judgment on the record, with respect to factual matters, are limited to the three identical agreed stipulations of fact. Thus, the issues before the Court are matters of law without the judicial need to make any credibility determinations.

2

(5:06 CV 139)
(5:06 CV 154)

## II. Are the Sanctions Imposed by the Akron Ordinance Civil or Criminal?

The defendant City of Akron and the defendant Nestor Traffic Systems contend that the sanctions levied upon owners of the vehicles detected by the cameras as violating speeding restrictions are civil in nature. The plaintiffs contend that the sanctions imposed upon the owner of the vehicle caught speeding, who is subsequently summoned to pay a fine for the violation, are criminal in nature.

If the sanctions are criminal in nature, then the owner of the vehicle, where the violation is captured by the camera, is entitled to the protections that apply in criminal prosecutions rather than the process employed by the City of Akron where alleged violators are given notice of the violation and, absent a defense, ordered to pay a fine. Initially, it is readily apparent that the summoned owner of the alleged violating vehicle is not entitled, under the Akron ordinance, to the constitutional protections that apply to criminal prosecutions. If the final judicial determination, applying the panoply of prior constitutional pronouncements,[5] leads to the judicial conclusion that the Akron City Ordinance is civil rather than criminal in nature, then the Akron Ordinance will survive plaintiffs' attacks in these two cases. On the other hand, if the judicial analysis of the competing motions for judgment on the pleadings results in a conclusion that the Akron City Ordinance constitutes a criminal proceeding, then the Akron Ordinance will not survive.

---

[5]*See* the discussion at III, *infra*.

3

### III.  Civil versus Criminal Analysis

In the recent decision of *Smith v. John Doe I,* 538 U.S. 84 (2003), the Supreme Court struggled with the question of whether the implementation of the Alaska Sex Offender Registration Act constituted a civil proceeding or a criminal proceeding involving the imposition of punishment.

Justice Kennedy, writing for the Supreme Court, addressed the civil/criminal inquiry and stated:

> This is the first time we have considered a claim that a sex offender registration and notification law constitutes retroactive punishment forbidden by the *Ex Post Facto* Clause.  The framework for our inquiry, however, is well established.  We must "ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).[6]  If the intention of the legislature was to impose punishment, that ends the inquiry.  If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is "'so punitive, either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" *Ibid.* (quoting *United States v. Ward*, 448 U.S. 242, 248-249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).[7]  Because we "ordinarily defer to the

---

[6]This case involved the Kansas Sexually Violent Predator Act which established procedures for the civil commitment of persons who, due to "mental abnormality," or a personality disorder are determined likely to engage in "predatory acts of sexual violence."  In addressing the issue, Justice Thomas, writing for the Supreme Court, declared "the categorization of a particular proceeding as civil or criminal 'is first of all a question of statutory construction.'"  Continuing, Justice Thomas observed "[a]lthough we recognize that a 'civil label is not always dispositive,'(citation omitted) we will reject the legislature's manifest intent only where a party challenging the statute provides 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.'" (citation omitted) *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997).  Justice Thomas' opinion concluded with the holding that the Kansas Sexually Violent Predator Act comported with due process requirements and did not run afoul of double jeopardy principles or constitute an exercise in impermissible *ex post facto* lawmaking.

[7]The *Ward* case involved an action by a lessee of an on-shore drilling facility suing to enjoin collection of

(continued...)

> legislature's stated intent," *Hendricks, supra,* at 361, 117 S.Ct. 2072, "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson v. United States*, 522 U.S. 93, 100, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (quoting *Ward, supra*, at 249, 100 S.Ct. 2636);[8] see also *Hendricks, supra*, at 361, 117 S.Ct. 2072; *United States v. Ursery*, 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996);[9] *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 365, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).[10]

---

[7](...continued)
"civil penalty" imposed for discharge of oil from retention pit into navigable waters. Justice Rehnquist, writing for the Court, observed:

> This Court has often stated that the question of whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. (Citations omitted). Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. (Citation omitted). Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so negative either in purpose or effect as to negate that intention. (Citation omitted). In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." (Citations omitted).

*United States v. Ward,* 100 S.Ct. 2636, 2641 (1980).

The Rehnquist opinion concluded with the ruling that the penalty imposed by Congress was civil.

[8]*Hudson* involved a setting where the government administratively imposed monetary penalties and occupational debarment on individuals for violation of federal banking statutes and who were later criminally indicted for essentially the same conduct. Once again, the Supreme Court held that the double jeopardy clause of the Fifth Amendment was not a bar to the later criminal prosecution because the administrative proceedings were civil, not criminal.

[9]The *Ursery* decision addressed forfeiture proceedings against property allegedly used to manufacture marijuana in the context of a criminal prosecution against *Ursery*. The *Ursery* opinion concluded that there was little doubt that Congress intended the forfeitures to be civil proceedings and the *Ursery* opinion found little evidence, much less the "clearest proof," required to demonstrate that the forfeiture proceedings were so punitive in form and effect as to render them criminal despite Congress' intent to the contrary.

[10]*One Assortment of 89 Firearms* addressed the issue of whether the government's forfeiture proceedings
(continued...)

(5:06 CV 139)
(5:06 CV 154)

*Smith v. John Doe I, et al.,* 538 U.S. 84, 92 (2003).

A.      Intent

The determination of whether the Akron ordinance at issue in this case is civil or criminal is a two step analysis. The first step is determination of legislative intent.

> Whether a statutory scheme is civil or criminal "is first of all a question of statutory construction." *Hendricks, supra*, at 361, 117 S.Ct. 2072 (internal quotation marks omitted); see also *Hudson, supra*, at 99, 118 S.Ct. 488. We consider the statute's text and its structure to determine the legislative objective. *Fleming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1438 (1960). A conclusion that the legislature intended to punish would satisfy an *ex post facto* challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.

*Id.*

In this case, the Akron Ordinance § 79.01 is entitled "Civil Penalties for Automated Mobile Speed Enforcement System Violations." *See* Appendix 1, First Agreed Stipulations of Fact, par. 6. The text of Akron Ordinance § 79.01 recites that the City of Akron is adopting a "civil enforcement system" and that violation of § 79.01 is a "noncriminal violation" for which a "civil penalty"[11] is assessed. Violations of § 79.01 do not involve the criminal justice system, a criminal traffic citation is not issued by a police officer, the offender is not summoned to traffic

---

[10](...continued)
following the gun owner's acquittal of violating Gun Control Act by knowingly engaging in business of dealing in firearms without a license was barred by either collateral estoppel or the double jeopardy clause. The Supreme Court declared that the statutory scheme of forfeiture was not punitive either in purpose or in effect so as to negate Congress' intention to establish a civil remedial mechanism.

[11]Civil sanctions may be labeled "penalties" without converting a civil scheme into a criminal one. *Smith v. Doe,* 538 at 95 (citing *89 Firearms,* 465 U.S. at 364 n. 6).

6

(5:06 CV 139)
(5:06 CV 154)

court and point are not assessed the driver or the vehicle owner's driving record by the Bureau of Motor Vehicles. S*ee* Appendix 1, First Agreed Stipulations of Fact, par. 5.

B.     Effect

Under *Smith*, if the legislative intent was to impose a non-punitive civil scheme, the next step in the analysis is to determine whether, notwithstanding legislative intent, the effects are so punitive as to negate the legislative intent to deem the ordinance civil. *Smith* at 85. The seven factor test of *Kennedy v. Mendoza-Martinez*[12] is a "useful framework" for analyzing whether the effects of the Akron ordinance are punitive. *Smith* at 97.

In *Mendoza-Martinez*, the Supreme Court considered whether congressional statutes divesting an American of his citizenship for leaving or remaining outside the United States at time of war and national emergency for the purpose of evading military service were constitutional. Continuing, the issue was whether the statutes employing the sanction of deprivation of nationality as a punishment for evading military service without affording constitutional safeguards guaranteed by the Fifth and Sixth Amendments to the Constitution was criminal or civil in nature. In a divided opinion, the majority of the Supreme Court concluded that the statutes divesting American citizens of citizenship for the conduct of evading military service were criminal in nature and unenforceable.

The majority opinion set forth seven factors[13] to be considered by the Court in making the civil/criminal determination. However, the analysis of these factors "may often point in differing

---

[12] 372 U.S.144 (1963).

[13]*See* section IV, *infra*.

7

(5:06 CV 139)
(5:06 CV 154)

directions" and no single factor is dispositive. *Mendoza-Martinez* at 169. The factors must be considered in relation to the statute on its face and only the "clearest proof" will override legislative intent. *Mendoza-Martinez* at 169; *Hudson v. United States,* 522 U.S. 93, 100 (1997).

### IV. The Positions of the Plaintiffs in Support of Their Motions for Judgment on the Record

A.  Mendenhall Plaintiff

Plaintiff Mendenhall's brief in support of her motion for judgment on the evidence (Docket No. 75) states "the key question is whether Akron's scheme is so punitive either in purpose or effect as to negate the intention City Council had when it affixed 'civil' label to it." In answering that question, Mendenhall points the Court to the seven factor analysis in *Mendoza-Martinez*.

The Mendenhall brief accurately summarizes the seven factors as follows:[14]

1.  Whether the sanction involves an affirmative disability or restraint;[15]

2.  Whether it has historically been regarded as a punishment;[16]

---

[14] *Mendoza-Martinez* at 168. The Mendenhall plaintiff's argument in support of a finding that each of the *Mendoza-Martinez* factors demonstrate a punitive effect is contained in the footnote which accompanies each factor.

[15] Under the Akron Ordinance, only a fine is imposed. Nevertheless, Mendenhall argues that a fine is "a pocket-book deterrence or restraint" citing *Atlas Roofing Co. v. Occupational Safety and Health Review Commission* 518 F.2d 990, 1001 (5th Cir. 1975).

[16] Mendenhall argues that fines have also historically been regarded as punishment.

8

(5:06 CV 139)
(5:06 CV 154)

      3.      Whether it comes into play only on a finding of scienter;[17]

      4.      Whether its operation will promote the traditional aims of punishment, namely retribution and deterrence;[18]

      5.      Whether the behavior to which it applies is already a crime;[19]

      6.      Whether an alternative purpose to which it may rationally be connected is assignable for it;[20] and

---

[17] The Akron Ordinance does not require the city to present proof of the car owner's scienter. Apparently, Mendenhall views scienter from the standpoint of the offending driver, not the owner of the vehicle, and acknowledges that the Akron hearing officer apparently considers, without statutory prompting, whether there was notice to the person driving the vehicle that the "restricted hours" were in effect so that the driver knowingly or willfully violated the speed limit.

[18] Mendenhall's brief declares:

> Akron's program certainly serves the traditional aims of punishment, in that it seeks not only to deter speeding near schools, but also seeks retribution for the act. Akron Codified Ordinance § 79.01 was enacted to "reduce the danger from vehicle operators speeding in and around school zones." (Doc. 29, Stipulation of Fact 1.) Akron's stated purpose, then, is to deter this kind of conduct.
>
> But the Code is also retributive. "The basic test whether a law is penal in the strict and primary sense is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual." *Bowles v. Farmers Nat. Bank of Lebanon, Ky.*, 147 F.2d 425, 428 (6th Cir. 1945). Here, the City of Akron does not seek to address a wrong done to a particular person; instead, it seeks to redress a wrong to the public.

Continuing, the Mendenhall brief argues that the fine, which does not exceed $100, is a penalty and thus punitive, citing *LaFranca*, 282 U.S. at 573 (quoting *United States v. Chouteau*, 102 U.S. 603, 611, 12 Otto 603, 26 L.Ed. 246 (1880)).

[19] Both the Akron City Ordinances and the Ohio statutes provide for the application of criminal penalties to a driver cited or arrested for driving in excess of the speeding limits for the applicable road.

[20] The Mendenhall brief discussing alternative purpose states:

> As for whether there is an alternative purpose to which the program may rationally be connected, and whether the penalty is excessive in relation to that alternative purpose, the City of Akron offered only one alternative purpose to this Court: to do more with less money. See Stipulation of Fact No. 1. This is

(continued...)

9

(5:06 CV 139)
(5:06 CV 154)

>       7.  Whether it appears excessive in relation to the alternative
>           purpose assigned.[21]

In addition to arguing that the seven factors of *Mendoza-Martinez* results in a conclusion that the effects of § 79.01 are punitive, Mendenhall also argues against the Akron Ordinance because it "punishes" the vehicle's owner whether or not the owner was the offending driver. Because the identity of the driver is irrelevant, Mendenhall argues that the Akron Ordinance creates an impermissible presumption that the driver is the owner. In support, Mendenhall cites *People v. Hildebrandt*[22] for the position that speeding is a personal, individual wrongdoing and the owner of the vehicle cannot be presumed to be the driver of the vehicle. However, *Hildebrandt* involved the presumption that the driver was the owner in a <u>criminal</u> case, and has no applicability in a civil enforcement scheme.

B.  <u>Sipe Plaintiffs</u>

The motion of the Sipe plaintiffs for judgment on the record includes a continuing request for class certification. (Docket # 57). The Sipe brief is lengthy in nature, but the underlying predicate for the plaintiffs' argument that the Akron ordinance violates the various

---

[20](...continued)
>       not the equivalent of the forfeitures imposed for violations of banking
>       regulations in *Hudson v. United States*; in that case, the forfeitures not only
>       served as a deterrent, but "also serve[d] to promote the stability of the banking
>       industry." *Hudson*, 522 U.S. at 105.

[21] The Mendenhall brief contends that the Akron Ordinance originally mandated fines of $150 to $250 per citation without regard to any other factors and even though Ohio statutes define speeding as a minor misdemeanor and mandate a fine of not more than $150 for the first offense. *See* R.C. §§ 2929.28(A)(2)(a)(v); 4511.99(A). Akron City Council subsequently amended § 79.01 to allow the Mayor to set the fines at $35 or more. According to Mendenhall's brief, the fine is currently $100, but notes there is no upper limit. *See* Appendix 1, paragraphs 46 and 48.

[22] 308 N.Y. 398, 126 N.E.2d 377 (N.Y. 1955).

(5:06 CV 139)
(5:06 CV 154)

provisions that accompany criminal prosecutions is the stated conclusion that the Akron Ordinance is criminal, as opposed to civil, in nature. The Sipe motion for judgment on the record, unlike the Mendenhall motion, does not engage in an analysis of whether the ordinance is civil or criminal in nature.

## V. The Joint Position of the Defendants in Support of their Motions for Judgment on the Record

The briefs filed by the defendants advance three basic propositions in support of judgment for the defendants. First, the Akron Ordinance under attack is civil, not criminal in nature, second, the Akron Ordinance complies with a due process analysis, and third, decisions in other jurisdictions support their positions.

## VI. The Court's Ruling

Initially, applying the teachings of the Supreme Court,[23] the Court finds that the plain language of Akron City Ordinance § 79.01 demonstrates the Akron City Council intended to adopt a civil enforcement system. However, the Court's determination of Akron City Council's intent is not dispositive or the end of the analysis. Even if the plain language of the ordinance demonstrates an intent to create a civil enforcement scheme, the Court must go on to analyze

---

[23]*Smith v. John Doe I*, 538 U.S. 84 (2003); *Kansas v. Hendricks*, 521 U.S. 346, 361(1997); *United States v. Ward*, 448 U.S. 242, 248-249 (1980); *Hudson v. United States*, 522 U.S. 93, 100, 118 St. Ct. 488, 139 L.Ed.2d 450 (1997) and *United States v. Ursery*, 518 U.S. 267, 290, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). The Supreme Court's struggle with the civil/criminal analysis dates back to the Seminal decision in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) which included the seven-factor test and upon which Mendenhall depends for her argument that the Akron Ordinance does not survive a Mendoza-Martinez analysis. The Court agrees with the defendants that the Akron Ordinance passes muster under the Mendoza-Martinez analysis, but in any event, the Court is of the view that subsequent Supreme Court decisions feature a directive for the courts to consider the statutory construction and intent inherit in the challenged legislation. Under that analysis, the Court finds that the Akron Ordinance survives.

11

(5:06 CV 139)
(5:06 CV 154)

whether, notwithstanding the intent of Akron City Council, the effects of the Akron Ordinance are punitive and render the ordinance criminal in nature. *Smith* at 92.

In applying the seven factors of *Mendoza-Martinez* to assess the effects of the Akron Ordinance, no single factor is dispositive and the factors must be analyzed in relation to the ordinance. Plaintiffs bear a "heavy burden" in overriding legislative intent and only the "clearest proof" of punitive effects will override Akron City Council's intent to implement a civil enforcement system. *Hudson* at 100; *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997).

Mendenhall has made an argument that for each of the *Mendoza-Martinez* factors, the effect of the Akron Ordinance is punitive. Some of Mendenhall's arguments are not frivolous.[24] However, in this case, none of the criminal effects associated with speeding are attendant to a violation of the civil enforcement scheme at issue in this case. The criminal justice system is not involved in a violation - a police officer does not issue a ticket and traffic court is not involved. Offenses are not reported to the Ohio Bureau of Motor Vehicles, no points are assessed and the offenders insurance company is not notified of a violation. There is no progressive penalty for repeat violations. Considering Akron City Council's intent to enact a civil enforcement system, and the effects of that enforcement, the Court finds that, on balance, the Akron Ordinance is

---

[24] For example, factor seven relates to excessiveness of the fine relative to its intended civil purpose. In this case, the Court does not find that a fine of $100 is excessive. However, at some point, higher fine may result in a different conclusion regarding that *Mendoza-Martinez* factor.

12

(5:06 CV 139)
(5:06 CV 154)

civil, not criminal in nature.[25] As a consequence, the protections that accompany criminal prosecutions do not apply.[26]

Second, the Court finds that the Akron Ordinance, as well as its implementation,[27] satisfies due process concerns. First, the ordinance provides for notice.[28] Second, the ordinance provides for a hearing,[29] third, a record is taken at the hearing[30] and fourth, the ordinance provides for the right of appeal to the Common Pleas Court of Summit County of an adverse decision.[31]

The challenges raised by the plaintiffs are similar to attacks raised in other jurisdictions that have failed. Specifically, the Court finds applicable the decisions in *Agomo v. Fenty*, 916 A.2d 181, 192-94 (D.C. Ct. App. 2007) in which the Court found that an automated speed enforcement system imposing civil liability did not violate due process; *Shavitz v. City of High Point*, 270 F. Supp. 2d 702, 721 (M.D.N.C. 2003) in which it was determined that the red light camera system imposing civil liability did not violate due process; *Holst v. City of Portland*,

---

[25] The Akron Ordinance is not punitive in that no points on the violator are assessed. Secondly, no arrest follows a violation. Third, the fine of $100 does not change the analysis. If, in the future, the City of Akron were to pass legislation significantly increasing the penalty, the Court's analysis might be subject to change.

[26] The Akron Ordinance also permits the owner of the vehicle cited for the violation to defend on two separate grounds. Specifically, that the vehicle had either been leased or stolen at the time of the reported violation. *See* ¶ 52 of the Agreed Stipulations of Fact.

[27] *See* ¶¶ 30 through 44 and 56 through 59 in the Agreed Stipulation of Fact.

[28] *See* ¶ 8 of the First Agreed Stipulation of Fact.

[29] *See* ¶¶ 17 and 18 of the First Agreed Stipulation of Fact.

[30] *See* ¶ 18 of the First Agreed Stipulation of Fact.

[31] *See* ¶ 54 in the Third Agreed Stipulation of Fact.

(5:06 CV 139)
(5:06 CV 154)

2004 U.S. Dist. LEXIS 9076, at \*\*10-12 (D. Or. May 14, 2004) finding that an automated traffic enforcement system imposing civil liability did not violate due process and *City of Davenport v. Seymour*, 2008 Iowa Sup. LEXIS 11, at \*6-7 (Iowa Aug. 29, 2008) holding that the automated speed enforcement system under consideration and imposing civil liability did not violate due process.

In sum, the court finds that the Akron Ordinance featuring cameras to record speeding violations in the City of Akron survives constitutional scrutiny.

The Mendenhall and Sipe plaintiffs have pled a significant number of separate causes of action. Each fails. Consequently, the Court will enter judgment for the defendants in both cases by separate entry.

IT IS SO ORDERED.

| December 9, 2008 | */s/ David D. Dowd, Jr.* |
|---|---|
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

14